**Robert "White Eagle"
OTTO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–97–00650–CR.

Court of Appeals of Texas,
El Paso.

April 10, 2003.

Mike Barclay, Alpine, for Appellant.

Frank D. Brown, Dist. Atty., Alpine, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

Robert "White Eagle" Otto was indicted for engaging in organized criminal activity by conspiring to commit the aggravated kidnaping of Joe and Margaret Ann Rowe. The State alleged that Otto performed the overt act of abducting the Rowes in pursuance of the conspiracy. Otto was convicted by a jury and sentenced by the trial court to fifty years' confinement. On appeal, we held that there was no evidence that Otto performed the overt act of abducting the Rowes. *See Otto v. State,* —— S.W.3d ——, ——, No. 08–97–00650–CR, slip op. at 10 (Tex.App.-El Paso 1999), *rev'd,* 95 S.W.3d 282 (Tex.Crim.App.2003).

We therefore reversed the conviction and rendered a judgment of acquittal. *Id.*

The Court of Criminal Appeals subsequently reversed our judgment, holding that the State was not required to prove that Otto abducted the Rowes. *See Otto v. State,* 95 S.W.3d 282, 284–85 (Tex.Crim. App.2003). The court remanded the cause for us to consider the remaining issues raised by Otto in his appeal to this Court. *Id.* at 285. Finding no reversible error regarding those issues, we affirm.

## Factual Background

Otto is a high-ranking officer of the "Republic of Texas." The Republic of Texas is a militia-type organization whose members believe that Texas is a sovereign nation that was never legally annexed by the United States. *McLaren v. State,* 2 S.W.3d 595, 596 n. 1 (Tex.App.-El Paso 1999), *rev'd sub nom. Otto v. State,* 95 S.W.3d 282 (Tex.Crim.App.2003). There was animosity between the Republic of Texas and the Rowes because the Rowes had reported the group's activities to the county sheriff. *Id.* at 596. One of their reports to the sheriff apparently resulted in the arrest of a member of the group. *Id.* Shortly after the arrest, three Republic of Texas members forcibly entered the Rowes' house and held them captive. *Id.* The kidnappers eventually relinquished control of the Rowes' house and left the Rowes there. It is undisputed that Otto was not present at the Rowes' house during the kidnaping. *Otto,* 95 S.W.3d at 284.

## Prosecutors' Argument

■ Otto contends that the trial court erred by allowing the prosecutors to argue that the jury could consider the law of parties, because the law of parties was not included in the jury charge. *See Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.

1990) ("[I]t is error for the State to present a statement of the law that is contrary to that presented in the charge to the jury.").

We believe the Court of Criminal Appeals' decision in this case requires us to reject Otto's contention. The court held that Otto's "involvement in the planning, execution, and aftermath of the kidnaping was tantamount to encouraging, directing, aiding, or attempting to aid in the offense, and therefore, it authorized a conviction under the law of parties." *Otto*, 95 S.W.3d at 285. Because the Court of Criminal Appeals thus held that the law of parties applies to this case, we cannot say that it was improper for the prosecutors to refer to the law of parties in their closing arguments.

## Jury Charge

Otto asserts that the trial court erred by instructing the jury that certain facts do not constitute a defense to organized criminal activity.

Section 71.03 of the Texas Penal Code prohibits a defendant from asserting the following facts as a defense:

(1) one or more members of the combination are not criminally responsible for the object offense;

(2) one or more members of the combination have been acquitted, have not been prosecuted or convicted, have been convicted of a different offense, or are immune from prosecution;

(3) a person has been charged with, acquitted, or convicted of any [of the object] offense[s] . . .; or

(4) once the initial combination of three or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved in a continuing course of conduct constituting an offense under this chapter.

TEX. PEN.CODE ANN. § 71.03 (Vernon 2003). Attempting to track this statutory language, the court instructed the jury:

It is no defense to prosecution for the offense of Engaging in Organized Criminal Activity that one or more members of a combination are not criminally responsible for the offense as charged in a particular case; that one or more members of a combination have been acquitted, have not been prosecuted or convicted, have been convicted of a different offense, or are immune from prosecution; or that there is a change in the number or identity of persons to a combination, as long as the initial combination of three or more persons is formed and two or more persons remain in a combination and are involved in a continuing course of conduct constituting the offense charged in the indictment.

■ Otto argues that it was improper to include this instruction in the jury charge because there was no evidence regarding any of the defenses excluded by section 71.03. *See* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2003) (requiring court to give jury a written charge "setting forth the law applicable to the case"); *Tro v. State*, 101 Tex.Crim. 185, 188, 274 S.W. 634, 635 (1925) ("[A] charge should not be given which is inapplicable to the evidence, or which presents a defense or an issue not made by the evidence."); *cf. Dowden v. State*, 537 S.W.2d 5, 7 (Tex.Crim.App.1976) (stating that it is useless and confusing to include in the charge statutory provisions that cannot be relied upon for a conviction). *But see Martinez v. State*, 157 Tex. Crim. 603, 606, 252 S.W.2d 186, 187–88 (1952) (holding that it was permissible to include statutory elements that did not apply to the case in the abstract portion of the charge).

█ Assuming that the court erred by instructing the jury regarding the excluded defenses, we must determine whether Otto was harmed by the error. Because Otto objected to the instruction, the question is whether he suffered "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Otto has the burden to suggest how prejudice may have occurred. *Ovalle v. State*, 13 S.W.3d 774, 787 & n. 38 (Tex.Crim.App.2000).

Otto argues that prejudice occurred because the instruction confused the jury. In particular, he complains of this language: "It is no defense to prosecution for the offense of Engaging in Organized Criminal Activity that one or more members of a combination are not criminally responsible for the offense as charged in a particular case." Otto asserts that this instruction allowed the jury to find him guilty even if it believed he was not criminally responsible. He argues that the jurors must have considered this instruction important because they underlined the words "criminally responsible for the offense" in the charge of his co-defendant.

█ We must consider Otto's argument in light of the entire jury charge, the arguments of counsel, the state of the evidence, and any other relevant information revealed by the record. *Ovalle*, 13 S.W.3d at 786; *Almanza*, 686 S.W.2d at 171.

The complained-of instruction was included in the abstract portion of the charge. The application paragraphs of the charge accurately set forth the elements of the offense and authorized a conviction only if the jury found those elements beyond a reasonable doubt. Thus, the application paragraphs authorized a conviction only if the jury found Otto to be criminally responsible.

█ The prosecutors did not refer to the complained-of instruction during their closing arguments. And although defense counsel's closing argument focused on the issue of criminal responsibility, the argument was based on an incorrect understanding of the law. Counsel argued that Otto could not be held responsible for the kidnaping because he did not personally perform the abduction. Under the Court of Criminal Appeals' decision, it is irrelevant whether Otto personally performed the abduction. *See Otto*, 95 S.W.3d at 284.

Finally, the State presented overwhelming evidence that Otto was involved in the planning and execution of the Rowes' kidnaping and was therefore criminally responsible for their abduction. Before the kidnaping, the Republic of Texas circulated fliers designating the Rowes' home as a "miliary target." The kidnappers used Otto's car in the course of the kidnaping. Joe Rowe testified that one of the kidnappers told him that Otto ordered the kidnaping. After they released the Rowes, the kidnappers retreated to their "ambassador's" house, which they referred to as their "embassy," with Otto and others. Otto also made a written statement in which he explained the reasons for kidnaping the Rowes. He indicated that he and other members of the Republic of Texas developed the plan for abducting the Rowes and agreed to execute the plan. Considering all this evidence, it is unlikely that the jury found Otto guilty even though it did not believe he was criminally responsible.

### Conclusion

For the reasons stated herein, the judgment of the trial court is affirmed.