# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00087-CR
NO. 03-05-00088-CR

**Jerome Anthony Michael Smith**

**&**

**Jerome Smith, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
NOS. 56036 & 56344, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In each cause, a jury found appellant Jerome Smith guilty of engaging in organized criminal activity by committing aggravated robbery as a member of a criminal street gang and assessed a ninety-nine-year prison term. *See* Tex. Pen. Code Ann. § 71.02 (West Supp. 2005). In a single point of error, appellant contends that the evidence is factually insufficient to sustain the convictions. We will affirm.

On November 7, 2003, Ki Sup Son was robbed at gunpoint by Brandon Reed, Chimeniem Echendu, and Denzel Davis. Two days later, Said Habsi was robbed at gunpoint by Reed and Markus Maddox. Reed, Echendu, and Maddox were members of the Gangster Disciples, a criminal street gang with scores of members in the Killeen area, many of them soldiers stationed

at Fort Hood. According to the evidence, appellant, an army sergeant, was the leader of the Killeen Gangster Disciples.

Appellant did not directly participate in either robbery. In fact, he was in Las Vegas, Nevada, when they were committed. He was convicted on the theory that he was criminally responsible for the conduct of the actual robbers. *See* Tex. Pen. Code Ann. § 7.02 (West 2003); *and see Otto v. State*, 95 S.W.3d 282, 284-85 (Tex. Crim. App. 2003) (applying law of parties in prosecution for organized criminal activity). Appellant's challenge to the sufficiency of the evidence is limited to the parties issue. He urges that the evidence is factually insufficient to support the jury's determination that he solicited, encouraged, directed, aided, or attempted to aid the actual robbers, and that he did so with the intent to promote or assist the commission of the robberies. Tex. Pen. Code Ann. § 7.02(a)(2).

Evidence will be deemed factually insufficient if the proof supporting the verdict is too weak to support a finding of guilt beyond a reasonable doubt or if the contrary evidence is sufficiently strong to preclude a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, and the reviewing court may disagree with the result only to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

Reed testified that he joined the Gangster Disciples while living in California. Reed said that he specialized in credit card fraud and identity theft, and he claimed to have netted over two million dollars for the Disciples from these activities. Reed joined the army and, in January 2003, was stationed at Fort Hood, where he eventually joined the Disciples chapter led by appellant. Reed boasted to appellant of his ability to raise large sums of money. Appellant, in turn, urged Reed to "do what you do" because, according to Reed, appellant wanted to diversify the gang's criminal activities, which at that time were primarily limited to drug sales.

Reed testified that in the fall of 2003, he began to feel additional pressure to produce income for the Gangster Disciples. Appellant was going to Las Vegas to meet with other gang members and wanted money for the trip. In October, appellant summoned Reed and several other gang members to a Killeen apartment. There, appellant ordered Cassyne Malveaux, Reed's friend and fellow Gangster, to sit in a chair. He then placed a plastic bag over Malveaux's head and began to question Reed about how he planned to raise money. Reed said that he told appellant "anything that came to my mind at the time," hoping to satisfy appellant before his friend suffocated. Another Gangster Disciple, William Brown, also testified to this incident.

By early November, Reed's fear of appellant was such that he was sleeping in his truck with a pistol. One night after appellant had left for the Las Vegas meeting, Reed was awakened and seized by Brown and another Disciple, Milton Everette, and taken to an apartment. Both Reed and Brown testified to what happened next. Everette called appellant in Las Vegas. Appellant ordered Everette and Brown to burn Reed's tongue with a hot knife for six seconds as a sanction for having failed to produce the money he had promised. After carrying out this order,

3

Everette and Brown locked Reed in a closet where appellant said he was to remain for twenty-six hours, although they released him earlier.

On November 7, a few days after being released from the closet, Reed was again summoned to a gang meeting. There, he was instructed by senior members "to get with somebody, anybody that would come with me and go out and make money whatever way possible." Reed convinced Echendu and Davis to help him and, armed with a pistol and taser obtained from Brown, they committed the first robbery. They delivered the proceeds, $300, to Brown, who testified that he wired the money to appellant in Las Vegas.[1] Two days later, again acting on orders from appellant relayed by senior Gangster Disciples, Reed and Maddox committed the second robbery. As before, the proceeds of the robbery, only $100 this time, were given to Brown, who wired the money to appellant.[2]

Reed began talking to army investigators in January 2004. He was taken into protective custody after receiving a death threat from appellant.

Neither Reed nor any other Gangster Disciple testified that appellant expressly ordered the commission of the two robberies. Instead, the testimony was that appellant ordered Reed to do whatever it took—which was understood to mean criminal activity of any kind—to raise money for the Gangster Disciples and appellant. The witnesses agreed that no Gangster Disciple in Killeen would undertake any criminal activity without receiving appellant's authorization.

---

[1] Brown testified that he sent the money by Western Union, but company employees were unable to find a receipt confirming the cash transfer.

[2] This transfer was documented by a Western Union receipt.

4

By challenging only the factual sufficiency of the evidence, appellant effectively concedes that the evidence is legally sufficient to support the jury's finding that he was a party to the two armed robberies. *See Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed). That is, appellant concedes that when the evidence is viewed in the light most favorable to the jury's verdict, it supports a finding beyond a reasonable doubt that he solicited, encouraged, or directed the commission of the robberies with the intent to promote their commission. Contrary to appellant's contention on appeal, we believe that the evidence also supports this finding even when it is viewed neutrally. Although there is no evidence that appellant explicitly ordered Reed and his companions to commit the two aggravated robberies, the evidence plainly shows that appellant intentionally encouraged and directed Reed to commit any criminal act necessary to obtain the money appellant demanded. Applying the standard of review articulated in *Zuniga*, we conclude that it was not manifestly unjust for the jury to find beyond a reasonable doubt that appellant was criminally responsible for the aggravated robberies committed by Reed and his companions.

The point of error is overruled and the judgments of conviction are affirmed.

_____

David Puryear, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed: June 15, 2006

Do Not Publish